[Civ. No. 543. Second Appellate District.—January 18, 1909.]

## JOHN GROSSE, Respondent, v. FRED BARMAN and MAX GOLDSCHMIDT, Appellants.

LEASE—COMPENSATION OF LESSOR—PERCENTAGE OF NET PROFITS OF LESSEE—DEDUCTIONS—"REPAIRS AND ALTERATIONS" UPON BUILD-ING.—Under a lease for thirty years, providing for a monthly rental, and an agreement for the construction of a building by the lessee upon the leased premises for profit, and for a percentage to the lessor from the net profits therefrom each six months, after deduct-ing rental, taxes, cost of arbitration, insurance premiums, and "cost of repairs and alterations made upon the building," the contract contemplates only the deduction of the cost of repairs and altera-tions made upon the completed building, and does not include any repairs and alterations made prior to the completion of the building and which, though not included in the original plans and specifica-tions, were reasonably necessary to its completion.

ID.—ABSENCE OF ISSUE AS TO DATE OF COMPLETION OF BUILDING—CON-FLICTING EVIDENCE—UNNECESSARY FINDING—DATE OF ALTERA-TIONS—IMPLIED FINDING.—When no issue was raised as to the date of the completion of the building, notwithstanding conflicting evi-dence in relation thereto, an independent finding as to such date is not necessary to support the judgment; and when the court found that items of alterations in the plans were incidental and necessary to a completed building, an implied finding will be intended in

support of the judgment, that those items were supplied before the completion of the building.

Id.— Construction of Contract — Deductions from Net Profit Periods.—Under the contract, construed as a whole, the net profits provided for in the lease cannot mean the net profits for the entire term of the lease, which, as an entirety, is divided into monthly rental periods and profit-sharing periods of six months each, commencing upon completion of the building, from which deductions are to be made as provided, which have occurred during each six months period only; and a provision in the contract requiring deposits to secure rent, taxes, insurance and interest prior to the completion of the building. cannot allow such payments to be carried forward and deducted from any future profit-earning period, nor can any loss of profits under the lease in any six months period be carried forward and made a charge against the gross income of any future six months period.

Id.—Evidence Properly Excluded—Expenditures Prior to Completion of Building—Intention of Parties Under Unambiguous Contract.—The court properly excluded evidence to show expenditures made under the lease, prior to the completion of the building; and also properly excluded evidence to show the circumstance under which the contract was made, as bearing on the intention of the parties to a contract, which clearly shows their intention, which is free from uncertainty and ambiguity, and is susceptible of only one construction.

Id.—Harmless Errors in Evidence.—Any errors in the admission of evidence, which are immaterial under the contract, as properly construed, may be disregarded as harmless.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. George H. Hutton, Judge.

The facts are stated in the opinion of the court.

Herbert J. Goudge, Williams, Goudge & Chandler, and Harry L. Dearing, for Appellants.

O'Melveny, Stevens & Millikin, for Respondent.

SHAW, J.—This action was instituted by plaintiff as assignee of the Abbot Kinney Company, a corporation, to recover the sum of twelve and a half per cent upon the net income and profits derived from certain demised premises during the half year ending December 31, 1906, alleged to be due to plaintiff as such assignee under and by virtue of a certain

agreement, dated the fourth day of March, 1905, and made and entered into between said defendants and plaintiff's assignor.

Among other things, it appears from said agreement that the Abbot Kinney Company did, on December 1, 1902, make a lease of the premises therein described to defendants and one Pirtle, the term of which was, by agreements dated July 1, 1903, and February 17, 1904, made between the same parties, extended as therein provided; that on September 3, 1904, the said company, at the request of defendants and said Pirtle, and concurrently with the cancellation of said prior lease and agreements for the extension thereof, made a lease of the same premises to the Development Company of Los Angeles, a corporation; that thereafter said defendants became the owners of said leasehold by said Abbot Kinney Company so demised to the Development Company of Los Angeles; that thereupon said defendants applied to said lessor for a new lease of said premises to and including an extension of the term thereof for the period of ten years, and to be made to a new corporation to be created for the purpose of taking and holding said leasehold of the premises and constructing a building thereon and maintaining and operating the same for profit, which said corporation so to be created was to be designated the Development Building Company; that thereupon, and upon cancellation of the lease made by said Abbot Kinney Company to said Development Company of Los Angeles, said Abbot Kinney Company did agree to make, execute and deliver to the Development Building Company a lease in form and substance fully set forth in said agreement.

Following the copy of said lease, it is further stated in said agreement:

"3rd.—And as further consideration for the making of said, lease to the Development Building Company, a copy of which has hereinbefore been set out in full, the parties of the first part agree with the party of the second part that at all times during the currency of said lease, they, the parties of the first part, will pay to the party of the second part twelve and one-half (12½) per cent of the net income and profits derived from the said demised premises by the lessee under said lease, payable to the party of the second part half yearly, as follows:

"The payment of the net profits or income payable to the party of the second part that shall have been earned prior to and including the 30th day of June, 1906, if any shall then be

earned, shall be paid to the party of the second part on or before the first day of August, 1906, and thereafter the portion of the net profits or income payable to the party of the second part shall be calculated and paid half yearly, as follows, to wit:

"The portion of the net profits or income earned for the half year from and including the first day of July in any year to and including the 31st day of December of the same year payable to the party of the second part shall be paid to the party of the second part on the first day of February next following and the portion of the net profits or income earned for the half year from and including the first day of January in any year to and including the 30th day of June of the same year payable to the party of the second part shall be paid to the party of the second part on the first day of August next following.

"The expression 'net income and profits' as used in this paragraph means, and is hereby defined to mean,—

"The gross income and profits derived from said demised premises after deducting therefrom—

"(1) The rental payable by the lessee under the foregoing lease; the taxes and assessments payable by the lessee under the foregoing lease; the cost of arbitration payable by the lessee under the foregoing lease, and the premiums upon the insurance maintained upon the building to be constructed upon the demised premises.

"(2) The cost of repairs and alterations made upon the building upon the demised premises during the currency of said lease, and the cost of any reconstruction or repairs thereof made necessary by reason of the destruction thereof or damage thereto by fire or required by the provisions of said lease, to the extent only that any insurance money received by the lessee will not pay for the same.

"(3) Operating expenses and expenses of maintenance including reasonable charges for clerical and other services rendered in connection with the operation, management, rental, preservation or care of the demised premises. Provided, however, that the parties of the first part shall not, nor shall any officer or director of said Development Building Company, receive at any time any salary or compensation for any service rendered by him in or about the demised premises or in connection with the operation or management thereof or of the building thereon.

"(4) A bond issue in the amount of $150,000 United States gold coin bearing interest at nine per cent, represented by two sets of coupons, one set for six per cent thereof, payable semi-annually, and one set for three per cent thereof, payable annually (the latter set of coupons representing a conditional interest payment, depending upon the payment of taxes upon the property and secured indebtedness at the volition of the grantor in said deed of trust), evidenced by 150 serial bonds of $1,000 each and interest coupons attached (including said extra interest coupons for a three per cent payment, which shall be an equivalent of a rebate agreement for taxes, if the same shall not be paid by the corporation or the trustee). Such bond issue shall be dated January 2, 1905, or a date approximate thereof; of the amount of indebtedness represented by said bond issue $10,000.00 shall be due and payable each year, commencing on the 2d day of January, 1908; said bond issue shall be secured by a deed of trust to the Title Insurance & Trust Company, as trustee, and shall contain the terms and conditions, and the agreement for payment of compensation to the trustee agreed upon between the parties of the first part and the said trustee and Messrs. Joseph F. Sartori and Maurice S. Hellman.

"The trust deed shall also provide for the payment of a monthly deposit by the said Development Building Company as a fund out of which to pay rent, taxes, insurance, interest and as a sinking fund of the principal of said bonds; said monthly payment shall be $1,250.00 per month beginning July 2, 1905, and to and including January 2, 1907, and $2,750.00 per month from January 2, 1907, until and including July 2, 1913, and thereafter said monthly payments shall be an amount which shall be equal to one-twelfth (1/12) of the six per cent of the appraised value of the demised land as ascertained by the method provided in the lease, plus 1/12 of the annual interest to accrue upon the interest coupons, plus 1/12 of the taxes and of the insurance and of the principal sum of said bonds, required to be paid.

"The trust deed shall also provide that the said bonds, either part or all as may be agreed upon between the parties of the first part and said Sartori and Hellman, may at the option of the said Development Building Company be paid off upon payment thereof of the par value of said bonds, accrued interest and a premium of not exceeding six per cent of the principal.

"The deduction from the income and profits of said building of any payment made of said bonds or coupons or of said monthly payment or of any payment made under said trust deed, shall be made at the time of and not prior to the time of the respective actual payments thereof.

"4th. And it is further agreed by the parties of the first part that for the purpose of securing the payment of said share of profits to be paid to the party of the second part as aforesaid, the parties of the first part agree to forthwith assign and transfer and vest 12½ per cent of the capital stock of said Development Building Company in the hands and name of First National Bank of Los Angeles, California, as trustee, under the trust, to pay and deliver unto the party of the second part all dividends and profits derived from said stock during the currency of said lease.

"Provided, however, and it is hereby agreed between the parties hereto that should at any time any assessment or assessments be levied against the capital stock of said Development Building Company, the parties of the first part shall in the first instance pay said assessment or assessments levied against said 12½ per cent of said stock in the hands of said trustee as aforesaid, but shall be entitled to deduct and retain the amount thereof out of the net income payable to the party of the second part as aforesaid for the half year in which said assessment or assessments were levied or to repayment thereof by the trustee out of the dividends declared on the stock held by said trustee during the half year in which said assessment or assessments were levied—the intent and meaning of this agreement being that if any assessment is levied in any year it shall be a charge on and payable out of the income payable to the party of the second part for that half year, but shall not be a charge on or payable out of the income payable to the party of the second part for any succeeding or other half year.

"It is further agreed that any dividends paid to said trustee on said stock held by said trustee, shall be deemed payments pro tanto of the net profits to be paid by the parties of the first part to the party of the second part under this agreement.

"5th. The parties of the first part shall at all times during the currency of the agreement for the payment to the parties of the first part of a share of the net profits hereinbefore pro-

vided, have the right of access to and examination of the records of said corporation Development Building Company, the books of account, accounts, dividend sheets, vouchers and the like and all other records and documentary matter which may appertain to said corporation, including in said right, the right to take extracts from the same.

"6th. And the parties of the first part further agree with the party of the second part that upon the due incorporation of the said Development Building Company, the said company will guarantee to the party of the second part the payment of said 12½ per cent of the net incomes and profits to the party of the second part in accordance with this agreement.

"In witness whereof," etc.

The Abbot Kinney Company duly executed the lease in accordance with said agreement and the Development Building Company entered upon the premises so demised thereby, and have ever since held the same under and in accordance with the terms of said lease.

The lease was for a term of thirty years from July 1, 1903, and, among other things, provides for the payment monthly, in advance, of the rental reserved therein to be paid to the lessor. The lessee therein, the Development Building Company, covenants that it will, on or before September 1, 1906, unless prevented by conditions over which it has no control, erect and complete upon the demised premises a seven-story building, "in conformity with the plans and specifications to be submitted to and approved by the lessor, . . . and, if unsatisfactory, to be rejected by the lessor, . . . within ten days after presentation thereof, . . . ; otherwise, to be deemed satisfactory and accepted," the value of which building should not be less than $170,000. The lessee further covenanted that it would during said term, and before the same became delinquent, pay all taxes, assessments and license charges properly assessed against the lands so demised and improvements thereon, and, at its own expense, keep said premises and all improvements thereon in good repair and condition, and during the currency of the lease keep the improvements to be constructed on said premises insured to the amount of their insurable value.

The court gave judgment for plaintiff, from which, and an order denying their motion for a new trial, the defendants prosecute this appeal.

The court made findings as to the gross income of the demised premises for the half year ending December 31, 1906, found the amount of costs and expenses to be deducted therefrom for said half year, and made a finding fixing the difference between said two sums as the net income and profits derived from said demised premises by the lessee thereof during said period, as defined in said agreement. In connection therewith the court further found that during said half year, in addition to the costs and expenses and charges so found to have been made, disbursed and paid, said lessee during said half year expiring December 31, 1906, on account of the building so erected upon said premises pursuant to the terms of the lease, did make certain other expenditures, as follows:

"July 26, 1906—Six mahogany doors at side of freight elevator, same being omitted when freight elevator contract was made, at $18.00..........$    98.00
"July 26, 1906—Six angle iron at freight elevator openings put in place, at $2.25...............    13.50
"July 26, 1906—Additional sidewalk lights where freight elevator was cut down, 10 feet at $1.90....    19.00
"July 31, 1906—Three gross door stops............    4.05
"Aug. 2, 1906—100 square feet copper wire vent at store front..............................    15.00
"Aug. 2, 1906—100 feet galvanized wire vent store front........ .......... ..................    5.00
"Aug. 2, 1906—Two wood stops for vents..........    6.96
"Aug. 2, 1906—Carpenter work in placing wire for vent, three days at $3.50.....................    10.50
"Aug. 6, 1906—Galvanized vent in basement toilet rooms at price agreed upon..................    50.00
"Aug. 6, 1906—Rain water leader from light well to alley....................................    27.00
"Aug. 8, 1906—One Cowel ventilator on roof extending to ceiling joist, of galvanized iron.........    25.00
"One vacuum sweeper and machinery exclusive of compressed air piping......................    2100.00
"One Collier patent mail chute..................    896.00
"Window shades and fixtures....................    609.25
"Electric fixtures........ .................. .........    1650.00
        "Total........ ......... ...............$5529.26

"That the foregoing work and material were not specified or shown in the plans or specifications for said building in

evidence and approved by Abbot Kinney, but that said work and material were an improvement of and reasonably necessary for the convenient use of said building, and were incidental and reasonably necessary to a completed building, and are not proper items of expense to be deducted from the gross income from said leased premises under the terms of said agreement.''

1. Appellants contend that that portion of the above finding, to the effect that the items and disbursements set forth and specified therein are not, under the terms of said agreement, proper items of cost, charges and expense to be deducted from the gross income derived from said premises for the half year expiring December 31, 1906, is not supported by the evidence. Appellants insist that the evidence shows that all of said items were added to the building after it had been completed, and, as they were not included in the plans and specifications, the lessee was not by the terms of the lease required to furnish them. There is a substantial conflict in the evidence as to the time when the building was completed, and an absence from the record of any finding thereon. There being, however, no issue raised by the pleadings as to the date of completion, the omission of an independent finding of such date by the court is not necessary in support of the judgment. The court finding that the items were incidental and necessary to a completed building, and by its judgment refusing to recognize the same as alterations, it must follow that the intendments always indulged in support of a judgment must be recognized here as amounting to an implied finding that these items were furnished before completion. The lease contemplated the construction of a seven-story building upon the leasehold in accordance with certain plans and specifications submitted to and approved by the lessor. The ''repairs and alterations'' mentioned in the agreement have reference to this building as a completed structure in accordance with the plans and specifications, and such added work and installation as the lessee might deem necessary for the convenient and proper use thereof. Alteration implies the existence of that which is altered. As here used, it does not contemplate initial construction or installation of that which has no existence, but a modification or change of that already constructed or installed. ''Alteration, *ex vi termini,* means a change or substitution of one thing for another.'' (2 Am. & Eng. Ency. of

Law, p. 179.)    As we interpret the agreement, the term, "the cost of . . . alterations made upon the building," as used therein, applies, not to additions to the building, nor to alterations in the specifications under which the building was constructed, but to changes, modifications and alterations in the building or in any part thereof constructed or installed for the convenient and proper use of the building, irrespective of whether such construction or installation was called for by the specification.

2. On cross-examination one of the defendants was interrogated as to the time when the lessee contracted for the vacuum sweeper and mail chute, to which question defendants objected, and the objection was overruled.    Plaintiff was also permitted to introduce evidence, over defendants' objection, to the effect that some of the items mentioned in said finding were a necessary part of the construction of a modern, seven-story office building.    These questions and the evidence sought to be elicited thereby were immaterial.    Notwithstanding this fact, under our interpretation of the agreement, we are unable to perceive in what manner appellants' rights could have been prejudiced by the questions or by the answers thereto. Hence, the errors may be disregarded, for the reason that they were harmless.

3. Defendants offered evidence to the effect that prior to July 1, 1906, the lessee had made expenditures on account of the sinking fund of $1,250 per month, as provided for in the agreement, and that prior to said date it had made disbursements aggregating a large sum on account of taxes, rent, alterations, clerical services and other expenditures in connection with the care, operation and preservation of said leasehold premises, the stated purpose of said offer being to show that up to December 31, 1906, there had not inured to the lessee, or defendants herein, any net income or profit whatsoever; to all of which plaintiff objected and said objection was sustained upon the ground that, under the terms of the agreement, defendants were not entitled to show any expenditures made prior to July 1, 1906.    This ruling, which was excepted to, calls for an interpretation of that part of the agreement whereby defendants obligated themselves at all times during the currency of said lease to pay to the Abbot Kinney Company a further consideration for the making of the lease of twelve and one-half per cent of the net income and profits

derived from the demised premises, which sum was made payable half yearly, as follows: That part earned prior to June 30, 1906, was payable on or before August 1, 1906; and thereafter the portion of the net profits or income payable to plaintiff's assignor was to be calculated and payable half yearly, the earnings for the first half of the year being payable on August 1st, and that for the second half year being payable on the first day of February. Notwithstanding the fact that by these provisions of the contract each year of the term of the lease is divided into two earning periods of six months each, at the expiration of which the net income and profits derived from said leasehold during such period shall be *calculated* and ascertained in the manner fully provided in the agreement, and twelve and one-half per cent thereof paid by defendants to plaintiff's assignor on the first day of the month succeeding the expiration of such half year periods, appellants earnestly contend that the net profits referred to and made payable to the Abbot Kinney Company mean the net profits for the entire term of the lease. It would do violence to the language used to accept this construction of the agreement.

The term of the lease is an entirety, but it is divided into rental earning and paying periods of one month each; so, by this agreement, "all times during the currency of said lease," which is the term of the lease, is divided into profit earning periods of six months, at the expiration of each of which periods there shall be deducted from the gross receipts received by the lessee during such period all expenditures on account of operation, etc., made by the lessee during said six months period only; and if there be a net profit for such half year, the Abbot Kinney Company or its assigns, shall by defendants be paid twelve and one-half per cent thereof. While this portion of the agreement seems to be plain and explicit in its terms, our attention is directed to other parts thereof which appellants claim support the construction for which they contend. The agreement provides that the lessee shall issue interest-bearing bonds in the principal sum of $150,000, to be dated approximately January 2, 1905, $10,000 of which principal sum shall be made payable each year commencing January 2, 1908, secured by deed of trust, which, among other conditions, shall contain a provision for the payment of a monthly deposit by said lessee of $1,250 per month, commenc-

ing on July 2, 1905, and increased commencing with January
2, 1907, to $2,750, which deposit shall constitute a fund out of
which to pay rent, taxes, insurance, interest and the sinking
fund of the principal of said bonds.    It is then provided that
"the deduction from the income and profits of said building of
any payment made of said bonds or coupons or of said monthly
payment, or of any payment made under said trust deed,
shall be made at the time of and not prior to the time of the
respective actual payments thereof."    As the building was
not to be completed until approximately September 1, 1906,
little or no revenue could be expected to be derived from the
leasehold; hence, as to the period expiring June 30, 1906, it is
provided that the net profits, "if any shall then be earned,
shall be paid," etc.    Nevertheless, it was necessary to make
provision for paying the rent, taxes, insurance and bond in-
terest which was to accrue and become payable prior to the
occupancy of the building.    The provision of the agreement
above quoted excludes the idea that such payments and
monthly deposit required to be paid by the lessee during the
half year period when there was no income, should be carried
forward to a succeeding half year period of profit making
and deducted from the income derived from the leasehold dur-
ing such profit-earning period.    This. seems clear from the
language used to the effect that the monthly deposits and
payments required to be made by the lessee under the terms
of the deed of trust shall be deducted from the income and
profit of the building "at the *time* of . . . the respective
actual payments thereof."    "Time," as here used, has refer-
ence to the half year period at the expiration of which the net
income and profit shall be calculated and paid the lessor.    The
words, "shall be made at the time of," exclude the idea that
such deduction might be made either prior or subsequent to
the time (half year period) of the actual payment.    While
the words, "and not prior to the time of," would seem un-
necessary, they neither add to nor detract from the scope and
meaning of the provision.    Their use, however, occasions no
inconsistency or conflict in the provision.    On the other hand,
to hold with appellants that these payments should be de-
ducted at a period *subsequent* to that (the half year period)
of the "respective actual payments thereof," would be to
wholly disregard the provision that such deductions *"shall be* .

*made at the time of . . . the respective actual payments thereof."*

Pursuant to the terms of the agreement, and for the purpose of securing the payment of said twelve and one-half per cent of the net income and profits, defendants placed in the hands of a trustee twelve and one-half per cent of the capital stock of said Development Building Company, said trustee being authorized to collect the dividends thereon during the currency of the lease. These dividends when paid to said Abbot Kinney Company by said trustee were to be deemed payments *pro tanto* of said twelve and one-half per cent of said net income and profits. It is further provided that should an assessment be levied upon said capital stock so transferred to the trustee, the defendants should, in the first instance, pay the same, and out of the twelve and one-half per cent of the net income for the half year in which such assessment was levied retain the amount of said assessment so paid by them, or the trustee, out of any dividends declared on said stock during the half year wherein such assessment was levied, might reimburse defendants for payment of such assessment—"the intent and meaning of this agreement being that if any assessment is levied in any year, it shall be a charge on and payable out of the income payable to the party of the second part for that half year, but shall not be a charge on or payable out of the income payable to the party of the second part for any succeeding or other half year." If there were no dividends declared, nor accrual of net profits during the half year in which the assessment was levied upon the capital stock, payment of such assessment devolved upon defendants without right to reimbursement out of net profits earned in subsequent half year periods, or dividends declared therein. Although its interpretation is not involved here, reference is had to this provision for the purpose of showing that one central idea is made prominent throughout the agreement, namely: that it was the intention of the parties that the term of said lease was to be divided into half year periods, each of which was, under the agreement, separate and distinct from the other; that at the expiration of each period an accounting should be had, wherein the lessee should be charged with the gross income for such period and credited with disbursements made under the terms of the agreement during such half year *only*. If the disbursements were less

than the gross income, the Abbot Kinney Company, and its assigns, should be entitled to receive from defendants twelve and one-half per cent upon such difference, which should be deemed to constitute the net income and profit for such period. If the disbursements exceeded the gross income for any half year, the Abbot Kinney Company, and its assigns, should not be entitled to anything whatsoever for such period, but such excess of disbursements over income for any such period should not be carried into any subsequent half year period and made a charge against the gross income for such subsequent period.

We perceive no conflict in the provisions with reference to the mode of ascertaining the net income and that establishing half year earning periods. To us it seems clear that the rental, taxes, assessments, etc., were such only as might be paid during such period.

Not only is the language of the agreement inconsistent with appellants' contention, but it is inconceivable, if the intention of the parties was in accordance with such contention, that they did not, in the draft of such an important document, elaborate in its completeness and reference to detail, make provision therein for accountings, interest and repayments in event the last or intervening years of the lease should consist of an unprofitable series.

There was no error in excluding evidence as to expenditures made prior to July 1, 1906, by the lessee in operating the leasehold.

4. Appellants contend that the court erred in excluding evidence as to the circumstances under which the agreement was made, citing in support of such contention section 1647, Civil Code. The provisions of this section are qualified by preceding sections of Title III, Interpretation of Contracts. There is no occasion for invoking the provisions of said section where a written contract is free from uncertainty and ambiguity. In such case the intention of the parties must be ascertained from the writing alone, when possible. (Secs. 1638, 1639.) Our conclusion is that the intention of the parties is clearly disclosed by the writing, and that the agreement is susceptible of but one construction; hence, it follows the evidence was properly excluded. (*Balfour* v. *Fresno C. & I. Co.,* 109 Cal. 221, [41 Pac. 876] ; *San Diego Flume Co.* v. *Chase,* 87 Cal. 561, [25 Pac. 756; 29 Pac. 825].)

We are unable to find any prejudicial error in the record, and, therefore, the judgment and order appealed from are affirmed.

Allen, P. J., and Taggart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 18, 1909.